UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SCOBEE and LINDA SCOBEE , | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-488-JAR |
| | ) | |
| USAA CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on its review of the Defendant USAA Casualty Insurance Company's ("USAA") in camera production of documents withheld from Plaintiffs Michael and Linda Scobee ("the Scobees"). As discussed herein, the Court finds that some of the information contained in the documents withheld from production is relevant and discoverable.  The Court, therefore, orders the redacted production of the documents withheld from production.

## STANDARD OF REVIEW

In this action, the Scobees bring a claim under the Kentucky Unfair Claims and Settlement Practices Act (KUCSPA).  KRS §§ 304.12-230, *et seq*. "The act prohibits unfair claims settlement practices to protect the public from unfair trade practices and fraud." *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 531 (Ky. 2022). When applied in conjunction with KRS § 446.070, the KUCSPA creates a statutory cause of action under which both first and third parties may bring claims against an insurer. *Id*.; *see also Austin v. Standard Fire Ins. Co.*, No. CV22100129WOBCJS, 2023 WL 5253000, at *5 (E.D. Ky. Aug. 15, 2023) ("The [KUCSPA] seeks to protect the public by requiring insurers to act in good faith when dealing with insureds and third-party claimants.").

– 1 –

Under KUCSPA, "an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (internal citation omitted); *Mobley v. Progressive Direct Ins. Co.*, No. CV22000126WOBCJS, 2023 WL 5156650, at *2 (E.D. Ky. Aug. 10, 2023). "Proof of this third element requires evidence that the insurer's conduct was outrageous, or because of his reckless indifference to the rights of others." *Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 738 (Ky. 2016). Thus, evidence relevant to whether USAA lacked a basis in law or fact for challenging the policy's coverage of the Scobee's claim or whether USAA acted with reckless disregard for whether a reasonable basis for denial of the Scobee's claim existed is discoverable in this KUCSPA action. *See Belt*, 664 S.W.3d at 535–38.

## FACTUAL BACKGROUND

On November 17, 2023, the Court held a hearing regarding the status of discovery. During that conference, counsel for the Scobees stated that USAA's discovery responses remained deficient. The Scobees again claimed they still had not received the statements of William "Cody" Norris and Lauren Norris, USAA's insureds. *See* ECF No. 113 at 5-6 ("there is a couple of different mentions of statements from the insured"). Upon further inquiry of the Court, counsel for USAA confirmed that it relied upon the statements of its insureds when making the decision not to settle the Scobees' claim against the Norrises.[1] Counsel for USAA,

---

[1] Counsel for USAA stated:
> I agree with your Honor. This is a simple case. From USAA's prospective, there

– 2 –

however, stated that USAA did not have any recorded statements from its insureds, other than those previously produced, including Mr. Norris's statement to police immediately following the accident and his deposition.  Moreover, USAA counsel verified that any other statements of the insureds had not been produced because they were attorney-client and/or work product communications.  *See* ECF No. 113 at 24 ("Defense counsel objected on the grounds of privilege, which is his right, because the privilege belonged to his client.").

Here, the documents withheld from production include some communications with USAA's outside, litigation counsel, which include the transmittal of pleadings in the underlying litigation and reports from counsel.  More importantly, USAA also withheld its litigation file, which consists of its employees' notes during the course of the underlying litigation. That is, the litigation file incorporates the notes of claims handlers Ryan Miliken and Jim Buckelew, and their communications with outside counsel.  Upon its review of the documents withheld from production, the litigation file includes various statements regarding the insureds that may be relevant to the Scobees' KUCSPA claim.  Further, according to its privilege log, USAA did not produce these documents because they contain attorney work product and communications with defense counsel.

The nature of  KUCSPA claim is such that communications and information shared between an insured and an insurer are inherently relevant.   Such communications may demonstrate bad faith and are not wholly protected from production by the work product

---

was disputed liability. They call their insured. He says "I didn't hit the motorcycle." He says that repeatedly. Even after the demand came in, there was another call back to him to find out what happened. And again he said "I did not hit the motorcycle." So from USAA's prospective, that's what they are hearing. This is a disputed liability case. If there was a question about what Mr. Norris' view was on what happened in the case, he was deposed in the underlying case by counsel for the Plaintiff. And he again said that he did not hit the motorcycle."
(ECF No. 113 at 25-26).

doctrine. *See Belt*, 664 S.W.3d at 535–38 (relying upon email communications with the insured, formal interviews with the insured, and even outside counsel to determine whether there was a reasonable basis for denying coverage).    Other courts have come to a similar conclusion:

> "The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially true in the insurance context, where insurers routinely perform investigations and accumulate files even when no litigation ensues. In this court's experience with such cases, the work product doctrine becomes an all-encompassing shroud of secrecy that is at once at odds with the federal rules' liberal discovery policy and the protection of attorney's thought processes and strategies the doctrine is designed to be. Rather than using the doctrine to immunize these strategies and opinions from discovery, some discovery opponents seem to use the doctrine to relieve themselves of the burden of producing factual information accumulated in what appears to be routine investigations."

*Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, No. 05-74423, 2006 WL 1851018, at *1 (E.D. Mich. July 5, 2006) (citing *Allendale Mutual Insurance v. Bull Data Systems, Inc.,* 145 F.R.D. 84, 88 (N.D.Ill. 1992)).   Thus, the Court finds that the nature of the KUCSPA claim requires some inquiry into work product. This limited review is particularly important in cases, such as here, where insured's defense is that it reasonably relied on statement of insured and the litigation file presents the only means to counter such a position.[2]

In addition, the Court finds that USAA has made a limited waiver of the work product doctrine and/or attorney-client privilege due to its reliance on the statements of the insureds in making its coverage decisions. *See Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2017 WL 3712445, at *2 (D. Ariz. Aug. 29, 2017) ("the Court finds that Defendant has impliedly waived the attorney-client privilege with respect to any communications between

---

[2] Similarly, courts have determined that the attorney-client privilege likewise does not protect such investigations: "Communications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege." *Michigan First Credit Union*, 2006 WL 1851018, at *2 (citing *Coleman v. American Broadcasting Corp., Inc.,* 106 F.R.D. 201, 205 (D.D.C.1985)).

Brown and ICA counsel relating to the coverage determination and the ultimate decision to approve Plaintiff's claim."); *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, No. 2:14-cv-2229-HRH, 2016 WL 4578139, at *5 (D. Ariz. Sept. 2, 2016) ("Because defendant has raised a defense that is highly likely to have incorporated the advice or judgment of its coverage counsel, defendant cannot shield its communications with [counsel]. It would be unfair not to give plaintiff an opportunity to discover what advice [the claims adjuster] might have received from coverage counsel."); *Miller v. York Risk Servs. Grp.*, No. 2:13-cv-1419 JWS, 2014 WL 4354833, at *2 (D. Ariz. Sept. 3, 2014) ("It is impossible to test the accuracy of York's assertion that the adjusters acted reasonably . . . if a significant factor forming a basis for their decisions—the communications with the claims lawyers—is cloaked in secrecy.").  Indeed, the Court finds that the statements of and regarding the insured in the litigation file are particularly discoverable in light of USAA's failure to provide reasonable discovery, providing even more of a basis for a limited waiver as it relates to these communications.  To be clear, however, the Court does not order the production of legal direction or advice from counsel, which are not included in the limited waiver.

In sum, given that the insureds' statements are not available in any other discovery produced by USAA and that USAA has cited the statements of its insureds as the basis of its decision not to settle the underlying lawsuit, the Court will produce redacted versions of the documents that USAA withheld from its production.  In the production, the Court has redacted attorney and legal advice, but included factual information reported by the insureds.

## FUTURE DATES

On review of the record, the Court notes that USAA filed a Motion for Summary Judgment (ECF No. 78) on September 21, 2023.  The Court previously stayed the briefing of the Motion for Summary Judgment to allow the parties to engage in discovery related to that Motion.

– 5 –

Given the advanced state of discovery,  the Court lifts the stay and orders the continued briefing the summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the Court hereby produces redacted versions of the documents that USAA withheld from its production as an Exhibit to this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs shall file any response to USAA's Motion for Summary Judgment (ECF No. 78) no later than **February 2, 2024**, and Defendant shall file any reply no later than **February 16, 2024**.

Dated this 12th day of January, 2024.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**