UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SCOBEE and LINDA SCOBEE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:22-CV-488-JAR |
| | ) | |
| v. | ) | |
| | ) | |
| USAA CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant USAA Casualty Insurance Company's ("USAA") Motion to Limit or Exclude the Testimony of Peter J. Hildebrand (ECF No. 149), USAA's Motion for Summary Judgment (ECF No. 78) and Plaintiffs' Motion for Summary Judgment and Brief in Support (ECF No. 155). This matter is fully briefed and ready for disposition. For the reasons stated herein, the Court grants Defendant USAA's Motion to Exclude or Limit the Testimony of Peter J. Hildebrand in part, grants USAA's Motion for Summary Judgment (ECF No. 78), and denies Plaintiffs' Motion for Summary Judgment (ECF No. 155).

## BACKGROUND

On April 4, 2015, Michael Scobee[1] purchased a blue Yamaha Royal Star motorcycle. (USAA Casualty Insurance Company's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("DSUMF"), ECF No. 80, ¶ 1) On the same date, Mr. Scobee was injured in a vehicle accident while operating his motorcycle in Louisville, Kentucky.

---

[1] Unless otherwise stated, "Scobee" refers to Mr. Scobee. The Court refers to Plaintiffs Michael Scobee and Linda Scobee as "the Scobees."

(DSUMF, ¶ 2) Linda Scobee, Mr. Scobee's wife, was traveling on the same road in a different vehicle but did not witness the accident. (DSUMF, ¶¶ 5-6) When interviewed after the accident, Mrs. Scobee stated that she observed William Norris change lanes between her and Mr. Scobee's motorcycle "dangerously close" to her, but she then passed both vehicles and continued on. (DSUMF, ¶ 7) Scobee suffered very serious injuries as a result of the accident. At the time of the accident, Lauren and William Norris were covered under an automobile insurance policy issued by Defendant USAA CIC ("USAA"), Policy No. 01186 32 37C 7102 1 (the "Norris Policy"), which provided $100,000 in coverage. (DSUMF, ¶¶ 10-11).

On September 18, 2015, the Scobees made a demand for $5.25 million dollars to USAA. (Plaintiffs' Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("PSUMF"), ECF No. 156, ¶¶ 26-31)[2] The September 18, 2015 demand stated, if it was in excess of the policy limit, then the demand was for the policy limit. (PSUMF, ¶ 32) The September 18, 2015 letter stated that the settlement demand would "remain open for 30 days from the date of receipt of this letter, unless sooner rejected or withdrawn in writing[.]" (ECF No. 80-9 at 6) USAA responded to the demand letter on October 6, 2018, indicating that "[b]ased on [its] investigation to date, [it] d[id] not see any negligence on [its] driver." (DSUMF, ¶ 25) The letter requested that the Scobees "provide any proof of liability as well as [their] theory of negligence against William Norris." (DSUMF, ¶ 26) The Scobees never responded to provide support for their theory of liability or to make another demand. (DSUMF, ¶ 27) Prior to the judgment in the Underlying Litigation, USAA had never made an offer to settle the claim based upon the April 4, 2015 accident. (PSUMF, ¶ 54) USAA did not make a settlement offer once it learned in 2017 that Norris used heroin on the day of the April 4, 2015 accident. (PSUMF, ¶ 72; ECF No. 115-1 at 258)

---

[2] USAA claims it received this demand letter on September 24, 2015. (DSUMF, ¶ 19)

The Scobees filed a lawsuit against Mr. Norris in Kentucky federal court in December 2015, but that case was later dismissed and, after Mr. Norris moved to Missouri, refiled in Missouri state court, alleging state law negligence claims ("Underlying Litigation") in May 2016. (DSUMF, ¶¶ 30-31) Mr. Norris died during the pendency of the Underlying Litigation, and the Scobees chose to proceed against a defendant ad litem, who was appointed at the parties' request. (DSUMF, ¶ 38) Lauren Norris was later appointed by the Missouri court as a defendant ad litem in the Underlying Litigation. (DSUMF, ¶ 39) A jury in St. Louis County, State of Missouri, later determined that William Norris caused the accident. *See* Jury Verdict, entered September 27, 2019 (DSUMF, ¶ 48) After the jury returned its verdict, the defendant ad litem formally made a motion to reduce any jury award to the policy limit under Mo. Rev. Stat. § 537.021. (DSUMF, ¶¶ 50-52) The trial court denied the motion and entered judgment in favor of the Scobees in the amount of $7,000,000. (Judgment, entered October 10, 2019; DSUMF, ¶ 48, 53)

In a January 2020 letter, USAA offered the Scobees the $100,000 policy limits for satisfaction of the judgment in the Underlying Litigation. (ECF No. 80-22)

In this action, the Scobees allege that USAA violated Kentucky's Unfair Claims Settlement Practices Act ("KUCSPA"), KY § 304.12-230, and by acting in bad faith by failing to settle their lawsuit against USAA's insured, Mr. Norris. USAA argues that the Scobees' Kentucky common law claims fail as a matter of law because USAA owed no common law duties to the Scobees as third parties. (ECF No. 79 at 10) The Scobees do not address this issue in their briefing. (ECF No. 122, *passim*) The Court holds that USAA owed no common law duty to a third party, such as the Scobees and their common law bad faith claim fails as a matter of law. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 531 (6th Cir. 2006). Thus, the Scobees' KUCSPA is the only issue remaining.

## I.    *DAUBERT* MOTION

Prior to addressing the parties' cross motions for summary judgment, the Court must address USAA's Motion to Limit or Exclude the Testimony of Peter J. Hildebrand (ECF No. 149). The Scobees rely heavily on the testimony of Mr. Hildebrand in their Response to USAA's Motion for Summary Judgment (ECF No. 122) and the Scobees' Motion for Summary Judgment (ECF No. 155). Thus, before turning to those cross motions, the Court must determine the extent to which Mr. Hildebrand's opinions are admissible and can be used to support their summary judgment arguments.

### A.    Legal Standard

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the

facts at issue. *Id*. A court is entitled to substantial discretion in determining whether expert testimony should be allowed. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell*, 702 F.3d at 456-57 (quotation omitted). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted); *see also Minn. Supply Co. v. Raymond Corp.,* 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted). "'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (quoting *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997)).

### B.    Peter Hildebrand

The Scobees designated Peter Hildebrand as an expert witness regarding USAA's claim handling "relative to insurance industry standards of care." Mr. Hildebrand worked in the insurance industry for over forty years. (ECF No. 149-2 at 2)

USAA moves to limit the testimony of Mr. Hildebrand. USAA asks the Court to preclude Mr. Hildebrand from testifying that USAA's handing of the Scobees' demand was in violation of KUCSPA; that USAA's conduct was "unreasonable," "unfair," "deceptive," or "reckless"; and that USAA should have tendered its Policy limits based upon Kentucky's comparative fault regime. (ECF No. 149, *passim*) Specifically, USAA contends that the following proposed opinions by Mr. Hildebrand improperly invade the province of the jury:

- Under Kentucky law, "refusal to pay claims without conducting a reasonable investigation is an unfair claim settlement practice," (ECF No. 149-2 at 15).

- USAA's "actions and handling were inconsistent with various unfair claims settlement provisions in Kentucky," (ECF No. 149-2 at 18).

- USAA "failed to act reasonably promptly with its communications," (ECF No. 149-2 at 18).

- USAA "failed to conduct a reasonable investigation as a basis to refuse to pay [the Scobees'] claim," (ECF No. 149-2 at 18).

- USAA's decision was a "bad faith failure to effectuate a prompt, fair and equitable settlement which forced [the Scobees] to institute litigation during which [USAA] has been stubbornly litigious," (ECF No. 149-2 at 18).

- USAA's "conduct was … unfair and deceptive and inconsistent with … the minimum standards established" under the KUCSPA," (ECF No. 149-2 at 19)

USAA argues that these opinions simply track the language of the KUCSPA or state that USAA engaged in an unfair practice; such opinions do not assist the jury because they are offering legal opinions. (ECF No. 149 at 6-7) USAA concedes that, while Mr. Hildebrand does not state that USAA "violated" the KUCSPA, he does offer the opinion that USAA's conduct was "inconsistent with" the KUCSPA. (ECF No. 162 at 3) USAA claims that Mr. Hildebrand's concluding opinion that USAA's claim handling was inconsistent with the KUCSPA inappropriately reaches a legal conclusion, lacks a factual basis, and improperly weighs evidence in the record. (ECF No. 149 at 7-8) Additionally, USAA claims that Mr. Hildebrand's one-sided view of the evidence makes his opinion unhelpful. *Id*.

- 6 -

USAA also criticizes Mr. Hildebrand's opinion regarding the impact of Kentucky's 'pure comparative' fault regime. In his report, Mr. Hildebrand stated, "[i]n my opinion, an insurance professional would conclude that the failure to apply pure comparative fault in evaluating settlement and documenting the same in the file presents an inaccurate assessment of the insurer's exposure and calculation of a reasonable settlement amount. By example, even a 10% allocation of fault to Norris on a $5,000,000 claim would result in claim values at five times the $100,000 policy limits of the USAA Policy." (ECF No. 122-1 at 54) USAA contends that Mr. Hildebrand misconstrues Kentucky law and states "that is not how apportionment works." (ECF No. 149 at 8 (citing *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 591 (Ky. Ct. App. 2019)). Rather, USAA claims that the Scobees would have had to establish that Mr. Norris was "*substantially*" at fault in order to be liable. (ECF No. 149 at 8 (emphasis in original))

In turn, the Scobees assert that Mr. Hildebrand's opinions should be allowed because they are based on industry custom and practice and will assist the jury in understanding claim handling "in order to fulfill its role as a trier of fact." (ECF No. 158 at 1-2, 5) They aver that Mr. Hildebrand's opinion that USAA's actions were inconsistent with various unfair claims settlement provisions in Kentucky is not saying that USAA "*violated* the KUSCPA." (ECF No. 158 at 3 (emphasis in original)). Rather, the Scobees contend that "[i]n most circumstances, claim handling standards and practices track the language of the KUCSPA word-for-word." (ECF No. 158 at 5) The Scobees further assert that USAA's "substantial factor" test for apportionment is just another attempt to "back door its 'beyond dispute' argument into expert motions to evade paying the price for its bad faith conduct." (ECF No. 158 at 10) Finally, the Scobees assert that Mr. Hildebrand's opinions are supported by record evidence, including Mrs. Scobee's statements to the Louisiana Metropolitan Police Department ("LMPD") and Mr. Scobee's post-coma statements.

The Court agrees that Mr. Hildebrand's testimony regarding the standards of claim handling in the insurance industry and opinions as to whether USAA's performance complied with those standards would be admissible. The Eighth Circuit has upheld the admission of opinion testimony addressing whether an insurance company handled a claim properly under industry standards. *Thomas v. State Farm Mutual Auto. Ins. Co.*, No. 4:22-CV-724 RLW, 2024 WL 195752, at *4 (E.D. Mo. Jan. 18, 2024); *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 340, 343–44 (8th Cir. 2009) ("Industry-wide practices are relevant to the question of whether an insurer acts within acceptable boundaries based on information it has received in a given case."); *see also Am. Mod. Home Ins. Co. v. Thomas*, No. 4:16-CV-215 CDP, 2018 WL 4404723, at *7 (E.D. Mo. Sept. 17, 2018) (allowing insurance industry experts to testify as to industry practices and standards, but not allowing them to testify to "a legal conclusion that the alleged conduct was or was not vexatious under Missouri law"); *AXIS Specialty Ins. Co. v. New Hampshire Ins. Co.*, No. 15-809-CV-W-ODS, 2017 WL 445746, at *2 (W.D. Mo. Feb. 2, 2017) (allowing insurance industry expert to testify, but with the limitation that he not offer legal opinions); *Certain Underwriters at Lloyd's v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2014 WL 3097284, at *6 (E.D. Mo. July 7, 2014) (same); *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05-CV-1934 DDN, 2013 WL 4776277, at *11–12 (E.D. Mo. Sept. 6, 2013) (same); *Amica Mut. Ins. Co. v. Willard*, No. 4:07-CV-1745 DDN, 2009 WL 2982902, at *3 (E.D. Mo. Sept. 14, 2009) (same). Likewise, the Court holds Mr. Hildebrand's testimony regarding the factual basis for his opinions is admissible. USAA's argument goes to the weight of the evidence, not its admissibility.

The Court, however, finds that Mr. Hildebrand's testimony regarding the ultimate issues in this case must be limited. Mr. Hildebrand cannot reach the ultimate issue of whether USAA's

performance violated the KUCSPA. Indisputably, Mr. Hildebrand cannot conclude that an action was violative or inconsistent with the KUCSPA because that is a legal conclusion. That is, as in *Thomas v. State Farm Mutual Auto. Ins. Co.* and *American Model Home Insurance Co. v. Thomas*, the Court finds that Mr. Hildebrand cannot offer opinions that USAA's claims handling was in bad faith or it acted in a way that was "unreasonable," "unfair," "deceptive," or "reckless" because all of these are elements of a KUCSPA claim. *See Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1118 (E.D. Mo. 2013) ("Although expert witnesses may embrace an ultimate issue in their testimony, they may not state legal standards or draw legal conclusions by applying law to the facts."); *Thomas*, 2024 WL 195752, at *5 (same). Similarly, the Court holds that Mr. Hildebrand's conclusion that USAA acted "with no reasonable basis" or "with reckless disregard" would not be admissible.

In addition, the Court finds it cannot consider Hildebrand's testimony regarding Kentucky's pure comparative fault regime because it is based upon an erroneous legal interpretation. Under *Messer*, 598 S.W.3d at 591, the Scobees would "need to do more than create a genuine issue concerning whether [Mr. Norris] was, to some degree or to any degree, at fault." Rather, under Kentucky jurisprudence, a jury would only apportion liability where a tortfeasor's fault "substantially" contributes to the accident. *Id*. Thus, the Court holds that Mr. Hildebrand's opinions regarding comparative fault are not admissible.

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

**B.  Discussion**

**1.  USAA Motion for Summary Judgment**

      **a.  Choice of Law**

USAA argues that Missouri substantive law governs this action and bars the Scobees' bad faith claims. (ECF No. 79 at 7-10) Conversely, the Scobees contend that Kentucky law applies here. (ECF No. 122 at 4-11)

This action was transferred from the Eastern District of Kentucky pursuant to 1404(a), so the Court looks to Kentucky's choice-of-law rules to resolve any conflicts with the substantive law of Missouri and Kentucky. *See Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585–86 (8th Cir. 2007) (quoting *Ferens v. John Deere Co.,* 494 U.S. 516, 531 (1990) ("if a district court in one state transfers an otherwise properly filed case to a district court in another state solely '[f]or the convenience of parties and witnesses,' 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the transferor court sits"). Both parties agree that Missouri and Kentucky law conflict, as Missouri does not permit a third-party, like the Scobees, to bring a bad-faith-failure-to-settle claim against an insurer in the absence of an assignment from the insured, but Kentucky allows the Scobees to pursue a statutory claim for bad faith. *See Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 829–30 (Mo. 2014); *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). Thus, the Court must consider Kentucky's conflict of law analysis.

Kentucky interprets the Scobees' KUCSPA as a tort action. *See Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 739 (Ky. 2016) ("A bad faith claim under Kentucky law is, essentially, a punitive action. The tort of bad faith is non-existent under our law, unless the underlying conduct is sufficient to warrant punitive damages."). "Kentucky has ample case law explaining that the 'any significant contacts' test applies to tort actions[.]" *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009); *Kirilenko v. Kirilenko*, 505 S.W.3d 766, 769 (Ky. 2016) (Kentucky follows the "most significant relationship" approach in tort and contract cases.).

Thus, the Court must determine whether Kentucky or Missouri has the more significant relationship to this cause of action. "As has been noted many times before, Kentucky has a strong preference for selecting its law in tort actions." *Novadx Ventures, Corp. v. Gress Eng'g, P.C.*, No.

CIV. 12-78-GFVT, 2013 WL 794375, at *2 (E.D. Ky. Mar. 4, 2013) (citing *See Adam v. J.B. Hunt Transp., Inc.,* 130 F.3d 219, 230–31 (6th Cir.1997) (citing *Foster v. Leggett,* 484 S.W.2d 827, 829 (Ky. 1972); *Arnett v. Thompson,* 433 S.W.2d 109, 113 (Ky. 1968)) *overruled on other grounds by Nolfi v. Ohio Kentucky Oil Corp.,* 675 F.3d 538 (6th Cir. 2012); *see also MW Universal, Inc. v. G5 Capital Partners, LLC,* 2012 WL 588743, at *3 (E.D. Ky. Feb. 21, 2012)). As stated by the Kentucky Supreme Court: "if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied." *Foster*, 484 S.W.2d at 829.

"Among the factors to be considered in determining a significant relationship, the *Restatement (Second) of Conflict of Laws* § 145 suggests, '(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Novadx Ventures, Corp. v. Gress Eng'g, P.C.*, No. CIV. 12-78-GFVT, 2013 WL 794375, at *3 (E.D. Ky. Mar. 4, 2013); *see Republic Servs., Inc. v. Liberty Mut. Ins. Co.,* 2007 WL 152102, at *2 (E.D. Ky. Jan. 12, 2007).

USAA contends that this cause of action does not have the most significant relationship with Kentucky because the Scobees' allegations concern only USAA's Missouri conduct. (ECF No. 79 at 9) ("[a]ll relevant contacts" to this action "support the application of Missouri law"). USAA asserts that the "*Underlying Litigation* may have in some ways implicated Kentucky—the accident occurred there, the policy was issued there, etc. –but *this action* does not." *Id.* (emphasis in original). USAA notes that Norris was a Missouri resident by the time the Scobees sued him and the Scobees were Missouri residents at all times. (ECF No. 126 at 7)

USAA also argues that the Scobees "*invited*" the application of Missouri law to this suit by pursuing the Underlying Litigation in Missouri. (ECF No. 79 at 9) (emphasis in original).

USAA notes that the Scobees initially sued Mr. Norris in Kentucky federal court, but dismissed that lawsuit and re-filed it in Missouri, asked for Missouri law to be applied, and obtained a Missouri judgement against him. (ECF No. 79 at 9) In any event, the Scobees note that, as this is not a contractual cause of action and there is no contractual privity between USAA and the Scobees, "[t]he bottom line is this is a dispute between Missouri residents challenging the failure to settle Missouri litigation." (ECF No. 79 at 10)

Applying *Restatement (Second) of Conflict of Laws* § 145's "significant contacts" test to the Scobees' bad faith claims, the Court holds that Kentucky law should apply because it has a significant interest in the Scobees' tort claims against USAA. The Scobees' cause of action began when USAA denied liability as to a Kentucky policy, labeled the claim as a "Kentucky Loss", and set as the "Base State" as Kentucky in USAA's claim file. (ECF No. 122 at 6) Thus, the Court finds the beginning and crux of the bad faith conduct relates to USAA's original claims handling of an accident that occurred in Kentucky and was designated as a Kentucky loss on a Kentucky Policy issued to a Kentucky resident, William Norris. *See also W. Am. Ins. Co. v. RLI Ins. Co.*, 698 F.3d 1069, 1072 (8th Cir. 2012) (under the most significant relationship test, counterclaim for bad faith or negligent refusal to settle the underlying claims was governed by the law of Kansas, where the insured purchased the primary and excess policies, not the law of Missouri, where the accident and subsequent litigation occurred).

Further, the Court finds that the fact that the Underlying Litigation occurred in Missouri is not dispositive of this issue, as USAA would indicate. The Scobees' tort lawsuit regarding Mr. Norris's negligence, which took place in Missouri purportedly for jurisdictional reasons, does not mean that the Missouri has the most significant interest in the Scobees' claim against USAA. Indeed, the parties agree, and this Court holds, that the bad faith tort, if any, primarily occurred at

or prior to the time that USAA did not accept the Scobees' offer of settlement. *See* Plaintiffs' Response to Defendant's Supplement to its Motion for Summary Judgment, ECF No. 160 at 4 ("The most important time period in this case has always been April 4, 2015, the date of the accident, to October 22, 2015, the date Plaintiffs' demand deadline expired."). That is, USAA's bad faith conduct began when it allegedly failed to thoroughly investigate the April 4, 2015 accident in Kentucky and failed to settle the dispute after the Scobees' September 18, 2015 demand deadline expired on October 22, 2015. The Underlying Litigation, and its Missouri nexus, is not determinative of the choice of law issue. As a result, the Court applies Kentucky law to the Scobees' claims against USAA.

### b.  KUCSPA Claim

The KUCSPA "prohibits unfair claims settlement practices to protect the public from unfair trade practices and fraud." *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 531 (Ky. 2022). "When applied in conjunction with KRS 446.070, the KUCSPA creates a statutory cause of action under which both first and third parties may bring claims against an insurer." *Id.*; *Rawe*, 462 F.3d at 532 ("The KUCSPA creates both first- and third-party obligations to settle insurance claims in good faith."). The KUCSPA "proscribes a list of [fifteen] particular acts and practices" that it deems unfair claims settlement practices. *Rawe*, 462 F.3d at 532 (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006).[3] "Under the KUCSPA, an insurance company must deal in good

---

[3] The Scobees primarily claim that USAA acted in bad faith through these acts or omissions:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

faith with a claimant in determining whether the company is contractually obligated to pay the claimant." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021). The Kentucky Supreme Court has held that a plaintiff has a "steep burden" of satisfying these requirements before a trial court should find the plaintiff to have brought a viable bad-faith claim. Those requirements are:

> (1) the insurer must be obligated to pay the insured's claim under the terms of the policy;
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and
> (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. The failure to show any of these elements eliminates the bad-faith claim as a matter of law.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993); *Mosley*, 626 S.W.3d at 584.

USAA claims that the Scobees have not shown that USAA failed to properly investigate the Scobees' demand and failed to demonstrate that it had "no reasonable basis" to reject the Scobees' demand.

---

***

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
***
(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]
***

Ky. Rev. Stat. Ann. § 304.12-230(1), (2), (3), (4), (6), (7) and (14).

i. **Liability Beyond Dispute**

USAA contends that it is not liable under the KUSPCA because liability was "genuinely disputed all the way through the date of the judgment" in the Underlying Litigation. (ECF No. 79 at 12). USAA asserts that the Scobees' demand letter sought the full policy limits based only on a police report and medical bills. *Id*. USAA claims that it reasonably asked for additional information to support the Scobees' theory of liability. *Id*. The Scobees' demand letter indicated that Mr. Norris collided with Mr. Scobee "[c]oming from behind," but USAA responded that Mr. Norris and the physical evidence both contradicted that premise. (Ex. I to DSUMF) Specifically, USAA asserts that Mr. Norris could not have overtaken Mr. Scobee's motorcycle and collided with it, yet also stayed in the same place long enough to make contact with a light pole that fell behind the lead vehicle. Similarly, USAA questions how damage to the left side of a vehicle could cause another vehicle to run off the road to the right in a left-hand curve. (DSUMF, ¶ 3)

USAA further notes that its expert's testimony supported a finding that Mr. Norris did not collide with the motorcycle. (ECF No. 79 at 13) Lou Peck, accident reconstructionist, testified that no blue paint transferred from the motorcycle to the Malibu, but the light pole had observable blue paint where the motorcycle collided with it. *Id*. In turn, Mr. Norris's Malibu had three horizontal scratches down its entire length that corresponded with a guardrail Mr. Norris said he hit a week earlier. *Id*.

USAA avers that, despite their argument that liability was beyond dispute, the Scobees did not move for summary judgment in the Underlying Litigation. USAA maintains that the Scobees' presentation of these facts to a jury does not undermine the reasonableness of USAA's dispute over Mr. Norris's liability. Thus, USAA argues that its position was amply supported by evidence and not "beyond dispute."

Finally, USAA points out that American Family Insurance Company ("American Family"), the Scobees' own insurer, concluded in 2016 that Mr. Scobee was responsible for the accident. (ECF No. 153 at 3) The Scobees had a policy with American Family that provided underinsured motorist ("UIM") coverage with a limit of $100,000 per person or $300,000 per accident (the "AmFam Policy"). The Scobees sought coverage under the AmFam Policy, but American Family found "no evidence" of Mr. Norris's liability and that Mr. Scobee was responsible for the accident. *Id*. Thus, USAA argues that American Family's conclusion that Mr. Norris was not responsible for the accident further demonstrates that Mr. Norris's liability was in dispute prior to the judgment in the Underlying Litigation. *Id*.

In their response, the Scobees maintain that the "beyond dispute" standard for a KUSCPA claim is incorrectly interpreted by USAA in its Motion for Summary Judgment. (ECF No. 122 at 11) (citing *Moseley*, 626 S.W. 3d at 586). The Scobees argue that *Mosley* held that "when an insurer conducts a thorough and reasonable investigation, and **then disputes liability** based on the reasonable basis established by that thorough investigation, then bad faith under Kentucky law is not necessarily triggered." (ECF No. 122 at 11 (emphasis in original)). The Scobees maintain the Court should not grant summary judgment in favor of USAA based upon their ineffective claim handling and insufficient investigation regarding the accident. (ECF No. 122 at 12-15)

The Scobees further assert that "USAA CIC refused to pay the subject claim 'without conducting a reasonable investigation based upon all available information.'" (ECF No. 122 at 11 (citing KRS § 304.12-230(4)). The Scobees purport to identify several deficiencies in USAA's investigation, demonstrating that it acted in bad faith, and USAA, therefore, is liable under the KUSPCA. Five months after the accident, the Scobees made a demand on September 18, 2015, which expired on October 22, 2015. The demand included the Scobees' theory of liability, several

dozen LMPD photographs and police report, the Scobees' medical bills and records totaling $736,855.36, Mr. Scobees' lost wage claim, and his claim for pain and suffering. (ECF No. 122 at 12) As stated, USAA responded by stating that it was still investigating the claim and asking for additional information. (ECF No. 79 at 12) Specifically, the Scobees argue that USAA did not inquire of Mr. Norris regarding his drug use and, once USAA did learn that Mr. Norris used heroin on the day of the accident, USAA failed to make a settlement offer to the Scobees. Likewise, after the accident, Mrs. Scobee reportedly told the investigating officer that Mr. Norris seemed like he was under the influence of drugs, but USAA did not investigate this statement. The Scobees complain that USAA's investigation was inadequate, particularly by the time it responded to the Scobee's settlement demand, because USAA had only obtained part of the LMPD police file and spoken to Mr. Norris on three occasions, without taking a recorded statement. (ECF No. 122 at 12-13) The Scobees assert that USAA did not speak with Sgt. Fey of the LMPD regarding his investigation of the accident or obtain the LMPD recorded statements of Linda Scobee and William Norris from the day of the accident. The Scobees criticize USAA for not probing the physical evidence of the crash prior to the deadline of the Scobees' settlement demand. Specifically, USAA did not inquire of Mr. Norris regarding the source of the "obvious damage" to the driver side of his vehicle, ask Mr. Norris for photographs he took at the scene of the accident, did not inspect the Scobee motorcycle or the Norris vehicle prior to the deadline for the Scobees' demand, failed to ask the Scobees' counsel for an extension of time with respect to the demand response, failed to retain an accident reconstruction expert to investigate the scene and vehicle. Finally, the Scobees criticize USAA for failing "to acknowledge Mr. Scobee's medical record where he told his treating physician that he was in an accident 'with another vehicle' after he awoke from a coma." (ECF No. 122 at 13)

The Scobees further respond that non-party American Family's actions have no bearing on their bad faith claims against USAA. (ECF No. 160, *passim*) The Scobees maintain that the most important dates are April 4, 2015, the date of the accident, to October 22, 2015, the date Plaintiffs' demand deadline expired. According to the Scobees, American Family's belated decision has no bearing on whether USAA properly investigated their claim and effectuated a fair settlement prior to the settlement deadline in October 2015. (ECF No. 160 at 4) Further, the Missouri AmFam Policy has never been at issue in this litigation and played no role in USAA's decision-making process. (ECF No. 160 at 5)

After consideration of the undisputed facts, the Court finds that, given the high burden of proof under the KUCSPA, USAA is not liable. As an initial matter, the Court reaffirms the application of Kentucky law to this dispute and the standard for liability under the KUCSPA. The Kentucky Supreme Court has stated that the violations delineated in the KUCSPA are insufficient in and of themselves to establish liability:

> Although the KUCSPA provides a list of improper practices, the offenses listed are merely "technical violations." Such "technical violations" are contractual claims that cannot form the basis of a private cause of action for tortious misconduct rising to the level of bad faith. Instead, a showing of intentional misconduct or reckless disregard of the rights of an insured is a prerequisite to the submission of a KUCSPA or KCPA claim and a jury instruction on punitive damages.

*Belt*, 664 S.W.3d at 531–32. Rather, of the tripartite *Wittmer* test, the Court finds that the Scobees have not demonstrated the second or third prongs: (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer*, 864 S.W.2d at 890 (citation omitted); *Rawe*, 462 F.3d at 533. "As required by KRS 446.070, a condition precedent to bringing a statutory bad faith action is that the claimant

was damaged by reason of the violation of the statute." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).

While USAA failed to take certain actions, the Scobees have not shown that USAA lacked a reasonable basis for denying their claim. The Scobees claim that the Court should not apply the "beyond dispute" standard unless and until it finds that USAA conducted a thorough and proper investigation of their claims. *See* ECF No. 122 at 11 (citing *Mosley*, 626 S.W.3d at 586). However, the *Mosley* case and subsequent case law impose no such qualification on the second prong of the *Wittmer* test: "An insurer lacks a reasonable basis for denying a claim only when the insured's liability is 'beyond dispute.'" *Martinez v. State Farm Mut. Auto. Ins. Co.*, 615 F. Supp. 3d 584, 591–92 (W.D. Ky. 2022) (quoting *Mosley*, 626 S.W.3d at 586. That is, "[w]hen an insured's liability is 'unclear,' by contrast, a bad-faith claim fails.'" *Id.*; *see also Hollaway*, 497 S.W.3d at 739 (where a "duty to pay her claim is not clearly established, this alone would be enough to deny her bad-faith claim under *Wittmer*"); *Messer*, 598 S.W.3d at 587 ("Before an insurer can be liable for bad faith, the underlying liability must be established.").

The Court holds that the Scobees have not shown that there was a time in which settlement of this action was necessary because liability had become "reasonably clear." *Shaheen*, 673 F. App'x at 486. It is undisputed that the only witnesses to the accident were Mr. Scobee and Mr. Norris. Mr. Scobee recalls almost nothing about the accident, which is entirely understandable, and Mr. Norris denied that he hit the motorcycle or caused the accident.  At most, Mrs. Scobee has testified that Mr. Norris was driving erratically prior to the accident. These contradictory accounts do not make liability beyond dispute. *See Hollaway*, 497 S.W.3d at 738 ("liability for the accident itself … formed the basis for the trial court's determination that there was a genuine dispute as to liability, rendering Hollaway's bad-faith claim a de facto nullity").

The Scobees likewise cannot show that the physical evidence put liability in this case beyond dispute. USAA's claims handler testified that its decision was "based on the fact that its insured denied causing the accident, the fact that a trained police officer failed to attribute any fault to its insured, and the fact that the physical evidence supported its insured's version of events." (ECF No. 126 at 11) The Scobees' settlement demand claimed that Mr. Norris collided with Mr. Scobee "[c]oming from behind," but Mr. Norris's statements and the physical evidence did not support that theory or were inconclusive. The Scobees did not respond to USAA with information regarding how the light pole collapsed on contact and Mr. Norris, who was traveling behind Mr. Scobee, collided with the light pole, damaging the hood of his Chevrolet Malibu. (DSUMF, ¶ 4) The Scobees also did not explain how damage to the left side of a Mr. Norris's vehicle could be responsible for causing Mr. Scobee's motorcycle to run off the road to the right in a left-hand curve. (DSUMF, ¶ 3) In fact, the LMPD officer's report stated that Mr. Scobee was "not under proper control" of the motorcycle, which lead to the accident. (DSUMF, ¶ 8)

Further, the Scobees fail to identify any investigative deficiency that would have changed USAA's liability determination. The Scobees state that USAA should have gathered more information, spoken to third parties, or taken a recorded statement of its insured. The Scobees, however, do not identify how any of this information would have resulted in a different conclusion such that liability of USAA's insured would have been beyond dispute. Indeed, Mr. Norris never wavered from his position that he did not strike Mr. Scobee's vehicle. Although Mr. Norris's use of heroin on the day of the accident is relevant to his reliability as a reporter of the accident, the Court finds that the Scobees have not shown how USAA's discovery and disclosure of Mr. Norris's heroin would have changed the liability determination or USAA's response to the Scobees' settlement offer. The responding officer likewise did not find it necessary to test Mr.

Norris for drug use or list it as a cause of the accident. The Scobees present no evidence that Mr. Norris's drug use more than twelve hours before the accident contributed to the accident. Further, the evidence before the Court indicates that Mr. Norris disclosed this information to his counsel in 2017, which was two years after the accident and significantly after the settlement period expired. (ECF No. 115-1 at 258) Although the Court agrees that Mr. Norris's drug use should have colored Mr. Norris's reliability and made him a dubious reporter, Mr. Norris's untrustworthy report does not make his liability beyond dispute, particularly when USAA outlined the physical evidence and expert testimony that supported Mr. Norris's version of events.

Likewise, Mr. Hildebrand's testimony, as limited by this Court, does not prove USAA's liability under the KUCSPA based upon these purported deficiencies. Mr. Hildebrand testified that USAA could have and should have performed some of these investigations as part of their coverage decision. However, nowhere in Mr. Hildebrand's opinion does he state that any of these investigations would have led to a different liability determination.

Similarly, the other technical violations interposed by the Scobees are not dispositive of the liability determination. The Scobees go through a long list of the investigative events that USAA did not perform. However, the Scobees "cite[] no authority indicating that [they] can establish liability by second-guessing the comprehensiveness of an insurer's investigation." *Martinez*, 615 F. Supp. 3d at 592. Moreover, "[e]ven if these alleged investigative shortcomings amount to '[m]ere technical violations of the statute,' which seems questionable…, they would 'not in and of themselves constitute bad faith.'" *Martinez*, 615 F. Supp. 3d at 593 (citing *Shaheen v. Progressive Cas. Ins. Co.*, 673 F. App'x 481, 485 (6th Cir. 2016)). USAA's alleged failure to obtain the LMPD reports, and the statements therein did not resolve the issue of liability. In fact, the responding officer did not issue any citations or otherwise resolve the cause of the accident.

Further, the Scobees cannot create liability simply because USAA may not have interviewed witnesses or obtained an accident reconstructionist at the earliest possible opportunity. The Court finds the Scobees' attempts to second guess USAA's investigation and litigation techniques to be unavailing, particularly when the Scobees have not shown how the result would have been different. *Mosley*, 626 S.W.3d at 592 ("In bad-faith actions, there is a heightened concern about the potential of prejudice to the insurer."); *Hollaway*, 497 S.W.3d at 738 ("impressions may change as investigations proceed").

### ii.    Outrageousness

As advanced in the third element, "KUCSPA requires plaintiffs to prove that an insurer's actions during resolution of the claim were outrageous, or because of the defendant's reckless indifference to the rights of others." *Hollaway*, 497 S.W.3d at 739; *see id.* ("A bad faith claim under Kentucky law is, essentially, a punitive action.").

USAA contends that it performed no action that could be considered outrageous as a matter of law. USAA asserts that it did not misrepresent anything to the Scobees, did not use the Scobees' financial situation or other disadvantageous position against them, did not otherwise attempt to evade liability, and did not insist upon unreasonable settlement conditions.  (ECF No. 79 at 15). Instead, USAA asserts that it countered the Scobees' demand with a request for additional information, but the Scobees never responded. *Id.*

USAA argues that the Scobees have not demonstrated through their listing of possible investigatory actions that USAA could have taken that it was motivated by an intent to deceive the Scobees or that such techniques would have changed the result of USAA's determination. (ECF No. 126 at 12-13) USAA further claims that Mr. Norris's "confidential disclosure" to his lawyer that he used heroin more than twelve hours prior to the accident does not establish that Mr. Norris

was at fault for the accident. (ECF No. 126 at 13) USAA notes that the investigating officer did not suspect Norris of being under the influence of drugs. *Id*. Finally, even if Norris's admission did cast doubt on his reliability as a reporter, USAA contends that the physical evidence did not support the Scobees' theory of the accident such that liability was not reasonably in dispute. (ECF No. 126 at 13)

In response, the Scobees primarily rely on USAA's failure to disclose its insured's drug use on the day of the accident and failure to settle the case once it learned of Mr. Norris's drug use. USAA appears to have found out in 2017 that William Norris used heroin the day of the accident but did not disclose that information. (ECF No. 122 at 13) The Scobees contend that this deceptive conduct is indicative of a "deliberate, evil motive and outrageous conduct, such that USAA … is also undoubtedly responsible for ongoing bad faith and punitive damages." *Id*.

In addition, the Scobees contend that USAA's timing and employment of its experts provides further evidence that its investigation was rooted in bad faith. (ECF No. 122 at 14-15) Notably, USAA disclosed its expert, Lou Peck, after learning of Mr. Norris's drug use and after the Scobees disclosed their two experts. (ECF No. 122 at 14) The Scobees claim that Mr. Peck was "**only** retained to controvert the expert opinions of Plaintiffs' retained expert, retired Missouri police office[r] and expert accident reconstructionist, Kevin Johnson, as well as LMPD's Sgt. Fey." (ECF No. 122 at 15 (emphasis in original)) The Scobees aver that Mr. Peck was paid "handsomely" for his "power point, drone footage, inspections, and 3D imagine, yet he was never even asked to inspect the alleged guardrail that was the center of William Norris' 'story' and the key to his defense." *Id*. The Scobees skeptically note that USAA paid expert Peter Curless to conduct an inspection of the Norris vehicle, which produced several photographs, one drawing, and no measurements. *Id*. The Scobees speculate that Mr. Curless was not endorsed by USAA and

did not present any opinions in this matter because "he did not fit into the defense counsel script." *Id*.

As repeatedly expressed, the Court remains concerned by USAA's reliance on the reporting of its insured, who used heroin on the early morning of April 4, 2015—albeit twelve hours prior to the accident—and who admittedly lied to officers after the accident regarding the source of scrapes along his vehicle. However, even without relying on Mr. Norris, the Scobees have not shown how USAA's failure to settle this claim was unreasonable, let alone outrageous. The Court finds the reliance on Mr. Norris as a reporter, while misplaced, is insufficient to demonstrate outrageous conduct. Likewise, the Court finds that USAA's disclosure of an opposing and paid expert after the Scobee's expert witness disclosure is not indicative of bad faith, but rather standard litigation practice. The Court notes that litigants often fail to utilize experts at trial, particularly when they are retained in an investigative capacity. The Court cannot impute an improper motive to USAA's failure to use Mr. Curless in the Underlying Litigation, as that decision could have been based upon a myriad of reasons.

In sum, because the Court finds that liability was not beyond dispute and there is no evidence of USAA's outrageous conduct, the Court grants summary judgment in favor of USAA.

### 2. Plaintiffs' Motion for Summary Judgment

For similar reasons, the Court denies the Scobees' Motion for Summary judgment. The Court does not re-address the parties' dispute regarding whether Kentucky or Missouri law applies, as the Court previously ruled in favor of the Scobees and found that Kentucky law applied.

The Scobees argue that USAA is liable under the KUCSPA because it "lacked any reasonable basis for denying liability." (ECF No. 155 at 5) The Scobees argue that USAA is liable

as a matter of law because it never made an offer prior to the expiration of the Scobees' September 18, 2015 demand. (ECF No. 155 at 5-8) The Scobees note that they provided LMPD officer's police report and photographs of the accident, Scobee's theory of liability, an accounting of Mr. Scobee's pain and suffering, future medical treatment, calculation of Mr. Scobee's lost income and future wages. (ECF No. 155 at 6) On October 6, 2015, USAA responded to the Scobees' demand letter saying "[b]ased on our investigation today, we do not see any negligence on our driver." (ECF No. 155 at 7) USAA never made a settlement, except for January 2020, when USAA's Ryan Milliken offered the Scobees $100,000 as a satisfaction of judgment. (ECF No. 155 at 8)

The Scobees further maintain that USAA failed to complete a thorough investigation of their claim. (ECF No. 155 at 8-12) Specifically, the Scobees argue that USAA did not take a recorded statement from Mr. Norris because USAA deemed it to be "not necessary". (ECF No. 155 at 9) Even more, the Scobees criticize USAA for "actively prevent[ing] other people from obtaining" a recorded statement from the now-deceased Mr. Norris *Id*. USAA did not ask Mr. Norris how the driver side damage occurred on his rental vehicle or about his drug use. *Id*. Rather, the Scobees claim that USAA appears to have "just taken his word for it" that he did not make contact with Mr. Scobee. *Id*. USAA also did not attempt obtain photographs and recorded statements taken by the LMPD the day of the accident. (ECF No. 155 at 10) The Scobees claim that USAA chose not to inspect the motorcycle driven by Mr. Scobee and thus failed to learn that the "measurements of the component parts of the Scobee motorcycle line[d] up with the drive side damage of the Norris vehicle." (ECF No. 155 at 11) Likewise, the Scobees criticize USAA for not inspecting the Norris vehicle, which "would have found that the measurements of the driver side damage of the Norris vehicle matched the measurement of component parts of the Scobee

motorcycle prior to the expiration of the Scobee demand." *Id*. The Scobees advance that USAA failed to inquire of Mr. Norris regarding Mrs. Scobee's remark that Mr. Norris was driving aggressively, his drug use, or his background.  (ECF No. 155 at 12)

Lastly, the Scobees assert that USAA's failure to pay them any money or deposit any money into the Court registry is evidence of USAA's continuing bad faith. The Scobees argue that USAA's January 2020 offer of the $100,000 policy limits to the Scobees was "completely unacceptable" given that it was conditioned upon a satisfaction of judgment for the Scobees' $7 million verdict in the Underlying Litigation. (ECF No. 155 at 12) The Scobees stress that USAA's failure to pay any money to the Scobees, including amounts that are no longer in dispute, is "clear evidence" of USAA's "continuing bad faith." (ECF No. 155 at 13)

For the same reasons as identified in granting USAA's Motion for Summary Judgment, the Court denies the Scobees' Motion for Summary Judgment. As previously discussed, given the high burden of proof under KUCSPA, the Scobees have failed to present sufficient evidence that USAA's insured was liable beyond dispute. At best, the Scobees aver that USAA ignored or did not inquire into Mr. Norris's drug use, driving history, and vehicle damage, but none of those elements prove liability. *See Martinez*, 615 F. Supp. 3d at 592 ("When an insured's liability is 'unclear,'… a bad-faith claim fails.").

Similarly, an allegedly insufficient investigation by USAA did not make Mr. Norris's liability beyond dispute. *See Martinez*, 615 F. Supp. 3d 584, 592 (W.D. Ky. 2022) ("Martinez cites no authority indicating that he can establish liability by second-guessing the comprehensiveness of an insurer's investigation."). Here, the Scobees conflate the reasonable basis for USAA's decision with its decision-making process. As noted in the KUCSPA, an insured must attempt to settle claims only once they have become "reasonably clear". KRS § 304.12-230(6).

Further, the Court finds that USAA failed to do a number of things but did not entirely fail to investigate the Scobees' claim. The outcome might be different if USAA completely abdicated its obligation to investigate the Scobees' claim, but that is not what occurred. Obviously, USAA relied upon the statements of its insured, but USAA did more than that. USAA retained Crawford & Company to investigate the accident and obtain photographs taken by the responding police officer. (ECF No. 165 at 10; ECF No. 80-13) USAA noted that the LMPD's police report supported Mr. Norris's version of how the accident occurred. *Id*. USAA reviewed the photos provided in the Scobee demand package that did not show physical evidence of a collision by Mr. Norris. *Id*. USAA also relied upon the orientation of the vehicles at the time of the collision, which did not support the Scobees' version of the events. Finally, USAA learned that the Scobees' own insurer determined that the damage to the left side of Mr. Norris's vehicle was unrelated to the April 4, 2015 accident based upon the physical evidence. *Id*.

The Court reiterates its finding that none of the purported investigative deficiencies identified by the Scobees would have changed the liability determination. The Scobees argue that USAA should have recorded statements from Mr. Norris, inspected the vehicles, and questioned Mr. Norris in greater detail regarding the accident and his background. However, the Scobees cannot demonstrate how this information would have changed the liability determination when Mr. Norris's position never changed and was seemingly consistent with the police report. Similarly, the Scobees have not shown how USAA's reliance on the photographs of the vehicles instead of requiring a vehicle inspection led to an incorrect liability determination. Likewise, as previously noted by the Court, the Scobees have not shown that Mr. Norris's drug use was a factor in this accident. Although Mrs. Scobee claims she told the responding officer that she suspected Mr. Norris was on drugs, this statement was not included in the police report and the officer did

not list drug use as a factor in the accident. The officer did not suspect drug use because he did not request that Mr. Norris submit to a drug test.

In sum, the Court finds no evidence of willfulness or punitive purpose by USAA. This is not an instance where the insurer did not investigate the claim or willfully ignored evidence of its insured's liability. Although USAA has not paid money into the Court registry or to the Scobees, the Court construes the USAA's post-Judgment offer of the policy limits and its declaratory judgment action as attempts to clarify the limits of its liability, rather than avoiding its obligations. The Court does not believe these litigation efforts are the type of intentional misconduct contemplated under the KUCSPA. Thus, the Court finds that the Scobees have not met their burden and denies their Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that USAA's Motion to Limit or Exclude the Testimony of Peter J. Hildebrand (ECF No. 149) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude Testimony of Bill Woolums (ECF No. 150) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant USAA Casualty Insurance Company's Motion for Summary Judgment (ECF No. 78) is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiffs' Motion for Summary Judgment and Brief in Support (ECF No. 155) is **DENIED**.

An appropriate Judgment is filed herewith.

Dated this 2nd day of July, 2024.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**